IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Marquita Smith, | ) | C/A No. 8:15-cv-02165-RMG-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden Marian Boulware, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 14.] Petitioner is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner, proceeding with the assistance of counsel, filed this Petition for writ of habeas corpus on May 28, 2015. [Doc. 1.] On September 23, 2015, Respondent filed a motion for summary judgment and a return and memorandum to the Petition. [Docs. 13, 14.] Petitioner filed a response in opposition on January 13, 2016. [Doc. 23.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted.

## BACKGROUND

Petitioner is confined in the South Carolina Department of Corrections at Camille Griffin Correctional Institution pursuant to orders of commitment of the Berkeley County Clerk of Court. [Doc. 1 at 1.] In August 2007, Petitioner was indicted for accessory before the fact of a felony (murder), accessory before the fact of a felony (burglary first degree),

accessory before the fact of a felony (kidnapping), and accessory before the fact of a felony (armed robbery). [App. 782–89.[1]] On August 27, 2007, represented by V. Craig Jones, Petitioner and two co-defendants proceeded to a jury trial. [App. 1–781.] The trial court denied Petitioner's pretrial motions for continuance and for severence [App. 31–35], and the State tried Petitioner on the charges of accessory before the fact of a felony (murder) and accessory before the fact of a felony (armed robbery) [App. 55]. On August 30, 2007, the jury found Petitioner guilty on both charges. [App. 745.] She received a sentence of thirty years imprisonment on each charge, to run concurrently. [App. 778–79.]

**Direct Appeal**

Petitioner filed a notice of appeal. [App. 795; Doc. 13-6.] Tommy A. Thomas and Tricia Blanchette filed a brief of appellant on Petitioner's behalf in the South Carolina Court of Appeals, dated December 3, 2008, raising the following issues:

> 1. Whether the lower court erred by denying the Appellant's motion for a continuance.
>
> 2. Whether the lower court erred by denying the Appellant's motion for a severence and a separate trial.

[App. 801.] The South Carolina Court of Appeals affirmed the conviction in an opinion that was submitted on December 1, 2009, and filed on March 24, 2010. [App. 843–48.] Petitioner filed a petition for rehearing and rehearing en banc [App. 849–53], which the South Carolina Court of Appeals denied on June 4, 2010 [App. 865–67]. Remittitur was issued on July 13, 2010. [App. 868.]

---

[1]The Appendix can be found at Docket Entry Numbers 13-1 through 13-5.

2

**PCR Proceedings**

### *First PCR Application*

On August 24, 2010, Jeremy A. Thompson filed an application for post-conviction relief ("PCR") on Petitioner's behalf.  [App. 869–75.]  The PCR application alleged Petitioner was being held in custody unlawfully based on the following grounds:

> (a)  The Applicant received ineffective assistance of counsel prior and during her trial in violation of her rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 14 of the South Carolina Constitution.

> (b)  The judgments and sentences against the Applicant were entered in violation of her rights to the due process of law and to the effective assistance of counsel.

> (c)  The Applicant received ineffective assistance of counsel on direct appeal in violation of her rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 14 of the South Carolina Constitution.

[App. 871.]  In support of these grounds, Petitioner alleged the following facts:

> (a)  Trial counsel failed to provide the Applicant effective assistance of counsel prior to and during her trial proceeding, inasmuch as counsel failed to recognize errors which occurred during her trial and failed to make appropriate objections with supporting legal arguments relating thereto.  Counsel's failure to make these objections may have changed the outcome of the Applicant's trial and deprived her of the opportunity to have these issues addressed on their merits on direct appeal.

> (b)  Trial counsel failed to conduct a sufficient investigation into the Applicant's factual circumstances and failed to present witnesses who would testify favorably on the Applicant's behalf at trial.

3

      (c)     Appellate counsel failed to present all potentially meritorious issues on direct appeal to the South Carolina Court of Appeals.

[*Id.*]  The State filed a return dated February 3, 2011.  [App. 883–88.]  On November 17, 2011, represented by Tara Dawn Shurling ("Shurling"), Petitioner amended her PCR application to raise the following claims[2]:

1.     Trial Counsel was ineffective for neglecting to object the first and every time the State sought to introduce testimony that the street term "a lick" conclusively meant an armed robbery.

2.     Trial Counsel was ineffective for neglecting to make a motion for a mistrial and/or a request for a curative charge where the State, without a sufficient evidentiary basis, elicited testimony that the term "a lick" meant an armed robbery.

3.     Trial Counsel was ineffective for failing to fully present arguments and authority in favor of the Applicant's Motions for Directed Verdicts where the evidence adduced at trial failed to establish that the crime in which the Applicant knowingly participated in any way put her on notice that her co-defendants would ultimately commit heinous crimes far beyond the scope of the Applicant's knowledge and involvement and which were not readily foreseeable by her.

4.     Trial Counsel was ineffective for failing to fully present arguments and authority in favor of the Applicant's Motions for Directed Verdicts where the evidence adduced at trial, including the Applicant's statement, established that the Applicant was present during the

---

[2]The amended PCR application was inadvertently filed in Charleston County; it was subsequently refiled in Berkeley Count on January 13, 2012.  [Doc. 13-1 at 3 (index of Appendix, indicating same; *see also* App. 879–82 (amended PCR application, filed in Charleston County); App. 876–78 (amended PCR application, filed in Berkeley County).]  The amended PCR application was served on opposing counsel on November 15, 2011, and fully addressed at the PCR hearing.  [Doc. 13-1 at 3.]

4

commission of a phase of the crimes for which she was charged with being an accessory before the fact.

5.    Trial Counsel was ineffective for failing to fully present available arguments supporting his motion for a severance, specifically that the complex and cumbersome nature of the jury instructions that would be necessary and appropriate if the Applicant was tried with her co-defendants would be confusing to a jury and would create a very real danger that the jury would not properly apply all the law applicable to the Applicant's charges.

6.    Trial Counsel was ineffective for failing to effectively request a jury instruction on the charge of accessory before the fact to strong armed robbery.

7.    Trial Counsel was ineffective for failing to research and present the lower court with an appropriate request to charge the jury on the law of accomplice liability as it relates to the charge of accessory before the fact. Counsel should have requested a charge which clearly instructed the jury that the Applicant could only be found guilty as an accessory before the fact for crimes which she knowingly aided and abetted the principals in the planning or committing *and/or* the commission of crimes which were the readily foreseeable consequence of the acts mutually agreed upon by the parties.

8.    Trial Counsel was ineffective for failing to object to jury instructions that did not adequately convey to the jury the requirement that they needed to apply a separate foreseeability analysis to determine the liability of the Applicant, separate from their findings concerning the liability of each of her co-defendants based upon what they should have readily foreseen as consequences of the acts they agreed with each other to commit.

9.    Trial Counsel was ineffective for failing, in his opening argument, to convey in a clear and organized manner the reasons the Applicant could not be found guilty of either accessory before the fact to armed robbery or accessory before the fact to murder.

10. Trial Counsel was ineffective for advising the jury in his closing argument that the Applicant *was not present* during the principal offenses where said position was contrary to the evidence adduced at trial, including the Applicant's own statement, and where this erroneous closing argument supplied the jury with a basis for finding a necessary element of the crimes the Applicant was on trial for; specifically that she *was not present* during the commission of the principal offenses.

11. Trial Counsel was ineffective for failing to specifically argue to the jury in closing that the Applicant could not be convicted on the charges for which she was on trial, where the evidence presented by the State established that she was present during one phase of the principal offenses committed by her codefendants.

12. Trial counsel failed to provide the Applicant with reasonable professional assistance of counsel in that he failed to adequately cross-examine co-defendant, Kerry Hollins, and thereby neglected to elicit testimony from him which would have been favorable to the defense.

13. Trial Counsel was ineffective for advising the Applicant that by not presenting a defense on her behalf he would retain the right to make his closing argument after the prosecution made their final arguments.

14. Trial Counsel was ineffective for neglecting to object to an improper closing argument in which the State told the jury that any time a victim is killed "in the course of another felony, then his death is murder. End of story."

15. Appellate Counsel was ineffective for failing to brief the issue of the lower court's failure to grant directed verdicts of acquittal on all counts where there was no direct evidence, or substantial circumstantial evidence, of the Applicant's knowing involvement in the principal offenses or that the crimes were readily foreseeable consequences of the acts she agreed to commit.

16. Appellate Counsel was ineffective for failing to brief the issue of the lower court's failure to grant a jury charge on Strong Arm Robbery as a lesser included offense of Armed Robbery.

> 17. Appellate Counsel failed to provide the Applicant with effective assistance of counsel inasmuch as she failed to brief the issue of the lower court's charge to the jury that the State would only have to prove that the Applicant aided and abetted another person "*to commit a crime*," thereby creating the risk that the jury would conclude that the Applicant's knowing assistance in committing *any* crime would make her mutually liable for all the acts committed by her co-defendants regardless of whether those acts were proven to be known to her or readily foreseeable by her.

[App. 879–82 (emphases in original).]

A hearing was held on November 17, 2011, and Petitioner was represented at the hearing by Shurling. [App. 916–1059.] On January 4, 2012, Petitioner filed a memorandum of law in support of her PCR application. [App. 1060–89.] On January 20, 2012, she filed a motion to supplement the PCR record. [App. 1090–99.] On February 1, 2012, the PCR court filed an order denying and dismissing the PCR application with prejudice. [App. 1100–17.] Petitioner filed a motion to alter or amend pursuant to Rule 59(e), SCRCP. [App. 1118–26.] The State filed a return to the motion on February 27, 2012 [App. 1127–29], and both parties submitted proposed orders to the PCR court [App. 1130–80.] On April 19, 2012, the PCR court filed an amended order denying and dismissing the PCR application with prejudice. [App. 1181–1200.]

### Second PCR Application

On July 10, 2012, Shurling filed a second PCR application on Petitioner's behalf. [App. 1201–06.] The PCR application alleged the following as the only ground:

> (a) PCR Attorney failed to perfect an appeal from order denying previous PCR Application docketed at 2010-CP-08-2985

[App. 1203.] In support of the ground, Petitioner alleged the following facts:

7

     (a)    An Order of Dismissal was filed on February 1, 2012. Following the filing of a Rule 59(e) Motion on behalf of the Applicant, an Amended Order of Dismissal was filed on 2010-CP-08-2985. PCR Counsel's paralegal did not recognize the second order to constitute a ruling on the pending 59(e) Motion. As a result, she failed to calendar the due date for the Notice of Appeal. Due to this clerical error, PCR Counsel failed to file a Notice of Appeal from the decision of the Court in this case. The Applicant now seeks a belated PCR Appeal through the guidelines and procedures set forth in Austin v. State, 305 SC 453, 409 S.E. 2d 395 (1991).

[*Id.*] On July 23, 2012, the PCR court filed a consent order granting a belated appeal pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991).[3]  [App. 1207–08.]

---

[3]As the Supreme Court of South Carolina has explained,

> This Court has allowed successive PCR applications where the applicant has been denied complete access to the appellate process. Under the PCR rules, an applicant is entitled to a full adjudication on the merits of the original petition, or "one bite at the apple." This "bite" includes an applicant's right to appeal the denial of a PCR application, and the right to assistance of counsel in that appeal.

> An *Austin* appeal is used when an applicant is prevented from seeking appellate review of a denial of his or her PCR application, such as when an attorney fails to seek timely review.

>                             * * *

> *Austin* appeals are considered "belated appeals" and are used to rectify unjust procedural defects, such as when an attorney does not file a timely appeal.

*Odom v. State*, 523 S.E.2d 753, 755–57 (S.C. 1999) (citations and footnote omitted).

8

A notice of appeal was filed and served.  [App. 1209–10.]  Shurling filed on Petitioner's behalf a petition for writ of certiorari in the Supreme Court of South Carolina, dated January 23, 2013.  [Doc. 13-8.]  The petition asserted the following issues:

1.    Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her claim that Trial Counsel was ineffective for neglecting to object the first and every time the State sought to introduce testimony that the street term "a lick" conclusively meant an armed robbery and where she was clearly prejudiced by this error by Trial Counsel?

2.    Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her claim that Trial Counsel was ineffective for neglecting to make a motion for a mistrial, and/or for failing to make a request for a curative charge where the State, without a sufficient evidentiary basis, elicited testimony that the term "a lick" meant an armed robbery and where the record below supports her contention that she was prejudiced by Trial Counsel's failure to do so?

3.    Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her claim that Trial Counsel was ineffective for failing to fully present arguments and authority in favor of her Motions for Directed Verdicts where the evidence adduced at trial failed to establish that the crime in which the Petitioner knowingly participated in any way put her on notice that her co-defendants would ultimately commit heinous crimes far beyond the scope of the Petitioner's knowledge and involvement and which were not readily foreseeable by her and where the record demonstrated that she was clearly prejudiced by this error both at trial and in her subsequent direct appeal?

4.    Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Trial Counsel was ineffective for failing to fully present arguments and

9

authority in favor of her Motions for Directed Verdicts where the evidence adduced at trial, including the Petitioner's own statement, established that she was present during the commission of a phase of the crimes for which she was charged with being an accessory before the fact to and where the record establishes that this failure by Trial Counsel prejudiced the Petitioner both at trial and in her subsequent direct appeal?

5.     Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Trial Counsel was ineffective for failing to fully present available arguments supporting her motion for a severance, specifically that the complex and cumbersome nature of the jury instructions that would be necessary and appropriate if the Petitioner was tried with her co-defendants would be confusing to a jury and would create a very real danger that the jury would not properly apply all the law applicable to the Petitioner's charges and where the record below supports her contention that she was prejudiced by Trial Counsel's omissions in this regard?

6.     Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Trial Counsel was ineffective for failing to specifically request a jury instruction on the charge of accessory before the fact to strong armed robbery and where the record before the lower court supported her claim that she was prejudiced by Trial Counsel's failure to do so?

7.     Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Trial Counsel was ineffective for failing to research, and present the trial court with, an appropriate request to charge the jury on the law of accomplice liability as it relates to the charge of accessory before the fact and where the record below supported her contention that Trial Counsel's failure in this regard prejudiced her ability to receive a fair trial.

8.     Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Trial Counsel was

10

ineffective for failing to object to jury instructions that did not adequately convey to the jury the requirement that they apply a separate foreseeability analysis to determine the liability of the Petitioner, separate from their findings concerning the liability of each of her co-defendants, and where the record below supports her assertion that she was significantly prejudiced by Trial Counsel's failure to enter an appropriate objection to the charge as given by the trial court.

9.     Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her assertion that Trial Counsel was ineffective for failing, in his opening argument, to convey in a clear and organized manner the reasons the Petitioner could not be found guilty of either accessory before the fact to armed robbery or accessory before the fact to murder and where she demonstrated to the lower court that she was prejudiced by this omission?

10.    Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Trial Counsel was ineffective for advising the jury in his closing argument that the Petitioner *was not present* during the principal offenses where said position was contrary to the evidence adduced at trial, including the Petitioner's own statement, and where this erroneous closing argument supplied the jury with a basis for finding a necessary element of the crimes the Petitioner was on trial for; specifically that she *was not present* during the commission of the principal offenses and thereby irreparably prejudiced her ability to receive a fair determination of her guilt by the jury at her trial?

11.    Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Trial Counsel was ineffective for failing to specifically argue to the jury in closing that the Petitioner could not be convicted on the charges for which she was on trial, where the evidence presented by the State established that she was present during one phase of the principal offenses committed by her codefendants and where the record below

supported her claim that Trial Counsel's missed opportunity prejudiced the Petitioner at trial.

12. Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Trial Counsel failed to provide the Petitioner with reasonable professional assistance of counsel in that he failed to adequately cross-examine co-defendant, Kerry Hollins, and thereby prejudiced her at trial by failing to elicit testimony from him which would have been extremely favorable to the defense.

13. Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her claim that Trial Counsel was ineffective for advising the Petitioner that by not presenting a defense on her behalf he would retain the right to make his closing argument after the prosecution made their final arguments and where the record below establishes that this error by Trial Counsel significantly prejudiced the Petitioner in that it caused her to make a waiver of her right to be fully heard in her defense, as protected by the Sixth and Fourteenth Amendments to the United States Constitution, as well as, Article I, Section 14 of the South Carolina Constitution, which was not knowingly and voluntarily entered?

13A. Did the lower court err in denying the Petitioner post-conviction relief based on her allegation that Trial Counsel was ineffective for advising her that she should not take the stand in order to preserve the opportunity to make the final argument to the jury after the State's closing argument where she meet her burden of proof with regard to her claim that Trial Counsel's advise was erroneous and caused her to make an unintelligent decision not to testify at her trial thereby violating her right to be fully heard in her defense, as protected by the Sixth and Fourteenth Amendments to the United States Constitution, as well as, Article I, Section 14 of the South Carolina Constitution,

14. Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Trial Counsel was

12

ineffective for neglecting to object to an improper closing argument in which the State told the jury that any time a victim is killed '"in the course of another felony, then his death is murder. End of story" and where she demonstrated that Trial Counsel's failure to object to this improper argument prejudiced her at trial by permitting the State to confuse the jury concerning the elements of the crime of accessory before the fact to murder and to dilute its burden of proof beyond a reasonable doubt?

15.    Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Appellate Counsel was ineffective for failing to brief the issue of the lower court's failure to grant directed verdicts of acquittal on all counts where there was no direct evidence, or substantial circumstantial evidence, of the Petitioner's knowing involvement in the principal offenses or that the crimes were readily foreseeable consequences of the acts she agreed to commit and where this issue would have been at least as strong, if not stronger, that the issues presented on direct appeal?

16.    Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Appellate Counsel was ineffective for failing to brief the issue of the lower court's failure to grant a jury charge on Strong Ann Robbery as a lesser included offense of Armed Robbery.

17.    Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Appellate Counsel failed to provide the Petitioner with effective assistance of counsel inasmuch as she failed to brief the meritorious issue of the lower court's charge to the jury that the State would only have to prove that the Petitioner aided and abetted another person "*to commit a crime*," and where this issue would have been at least as strong on direct appeal as the issues presented on appeal.

18.    Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation, developed during her evidentiary hearing, that Trial Counsel was ineffective for failing to effectively argue a Rule 5, SCRCrimP, violation in his motion for a continuance and severance, where the State did not disclose a statement given by a co-defendant that had agreed to cooperate and be a witness for the prosecution at the Petitioner's trial.

19.    Did the lower court err in denying the Petitioner post-conviction relief where she met her burden of proof with regard to her allegation that Trial Counsel was ineffective for failing to interview a co-defendant who turned State's witness very shortly prior to trial, or in the alternative, for failing to request a brief recess or continuance to do so and where she presented evidence which supported her claim that she was significantly prejudiced by Trial Counsel's failure to do so?

[*Id.* at 3–6 (emphases in original).] On July 23, 2014, the South Carolina Court of Appeals granted the petition for writ of certiorari with respect to Petitioner's second PCR application and proceeded with an *Austin* review of the denial of the first PCR application. [Doc. 13-9.] Upon review, the court denied the petition for writ of certiorari from the denial of Petitioner's first PCR application. [*Id.*] Petitioner filed a request for rehearing and request for rehearing en banc [Doc. 13-10], and the South Carolina Court of Appeals denied the petition for rehearing on September 18, 2014. [Doc. 13-11.] On October 24, 214, Petitioner filed in the Supreme Court of South Carolina a petition for leave to file a petition for writ of certiorari to the South Carolina Court of Appeals. [Doc. 13-12.] The Supreme Court of South Carolina denied the petition on December 4, 2014 [Doc. 13-14], and the South Carolina Court of Appeals issued the remittitur on January 5, 2015 [Doc. 13-15].

**Petition for Writ of Habeas Corpus**

14

Petitioner filed this Petition for writ of habeas corpus on May 28, 2015. [Doc. 1.]

Petitioner raises the following grounds for relief, quoted substantially verbatim, in her

Petition pursuant to 28 U.S.C. § 2254:

**GROUND ONE:** The State Court erred in failing to find that Petitioner received ineffective assistance of counsel, in violation of her rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, where she demonstrated that she was prejudiced by Trial Counsel's Failure to Adequately Argue Petitioner's Pre-Trial Motions for a Severance and Continuance and his failure to seek a recess to interview co-defendant Hollins when a Continuance was denied.

**GROUND TWO:** The State erred in denying Petitioner relief where she clearly established that Trial Counsel was ineffective in his failure to adequately cross-examine state witness, co-defendant, Hollins.

**GROUND THREE:** Trial Counsel violated Petitioner's right to effective assistance of counsel, as protected by the Sixth and Fourteenth Amendments to the United States Constitution, by his failure to properly respond to testimony from State Witness, co-defendant, Hollins' that a "Lick" Conclusively Meant an Armed Robbery.

**GROUND FOUR:** Petitioner's right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, was violated at trial when Trial Counsel neglected to adequately argue her right to directed verdicts of acquittal based upon the insufficiency of the evidence presented by the prosecution.

**GROUND FIVE:** Petitioner should have been granted relief in the state court where she established that Trial Counsel was ineffective for advising her that by not presenting a defense on her behalf he would retain the right to make his closing argument after the prosecution made their final arguments and further, where Trial Counsel was ineffective for advising her that she should not take the stand in order to preserve the opportunity to make the

15

final argument to the jury after the State's closing argument.

**GROUND SIX:** Petitioner's right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, was violated in state court where Trial Counsel failed to request appropriate and necessary jury instructions on her behalf at trial and where he for failed to object to jury instructions that did not adequately convey to the jury the requirement that they apply a separate foreseeability analysis to determine the liability of petitioner, separate from their findings concerning the liability of each of her co-defendants.

**GROUND SEVEN:** Trial Counsel was ineffective for failing to make certain crucial closing arguments to the jury and for failing to object to inappropriate arguments made by the prosecution in the State's closing argument.

**GROUND EIGHT:** Failure of Trial Counsel to argue in opening statements that murder was not a foreseeable consequence of any agreement entered into between petitioner and her co-defendants.

**GROUND NINE:** Ineffective Assistance of Counsel on Direct Appeal.

**GROUND TEN:** The Supreme Court of South Carolina violated Petitioner's equal protection and due process rights, pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, when it denied her the opportunity to file a Petition for Writ of Certiorari to the South Carolina Court of Appeals.

[Doc. 1-1 at 3–30.]  As stated, on September 23, 2015, Respondent filed a motion for summary judgment.  [Doc. 14.]  On January 13, 2016, Petitioner filed a response in opposition.  [Doc. 23.]  Accordingly, the motion for summary judgment is ripe for review.

## **APPLICABLE LAW**

16

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over

17

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

18

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has

appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (I) there is an absence of available State corrective process; or
>>
>>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest

20

court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the Supreme Court of South Carolina through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts

22

have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim.  *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing

*Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## DISCUSSION

**Non-Cognizable Ground**

In Ground Ten, Petitioner argues the Supreme Court of South Carolina violated Petitioner's equal protection and due process rights when it denied her the opportunity to file a petition for writ of certiorari to the South Carolina Court of Appeals. [Doc. 1-1 at 28.] However, a "petitioner's scattershot claims of errors in the state habeas proceedings are

24

not cognizable in this court." *Miller v. Johnson*, No. 7:06-cv-00611, 2007 WL 1725617, at *14 (W.D. Va Jun. 12, 2007); *see Wright v. Angelone*, 151 F.3d 151, 159 (4th Cir. 1998) ("[W]e agree with the district court that this claim, a challenge to Virginia's state habeas corpus proceedings, cannot provide a basis for federal habeas relief.") (citing *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review)); *see also Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) ("Moreover, because the constitutional error [the petitioner] raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim."). Accordingly, federal habeas relief is unavailable with respect to Ground Ten.

**Procedurally Barred Ground**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent argues Ground One(B)[5] is procedurally defaulted and that Petitioner cannot overcome the default of these grounds because she cannot establish cause and prejudice or a miscarriage of justice. [Doc. 13 at 47–67.] The Court agrees Ground One(B) is procedurally barred.

---

[5]Respondent contends Petitioner's Ground One raises two separate claims: that trial counsel was ineffective for failing to adequately argue (A) the motion for a severance and (B) the motion for a continuance. [Doc. 13 at 29.]

In Ground One(B), Petitioner alleges trial counsel was ineffective for failing to adequately argue Petitioner's pre-trial motion for a continuance and for failing to seek a recess to interview co-defendant Hollins when the motion for a continuance was denied. [Doc. 1-1 at 3.]  This claim was raised to the Supreme Court of South Carolina in Petitioner's petition for writ of certiorari but was not addressed in the PCR court's amended order of dismissal.  Petitioner failed to file a Rule 59(e) motion after the amended order of dismissal to preserve the issue for appeal; therefore, it is procedurally barred from federal habeas review, *see Marlar*, 653 S.E.2d 266, absent a showing of cause and actual prejudice, *see Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule.  *Carrier*, 477 U.S. at 488.  *But see Martinez v. Ryan*, --- U.S. ---, ---, 132 S. Ct. 1309, 1315 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.").  Petitioner acknowledges that Respondent contends Ground One(B) is procedurally defaulted [Doc. 23 at 1], but fails to provide any argument to establish cause and prejudice [*see* Doc. 23].  Accordingly, because Petitioner has not established cause for the default of his ground, Ground One(B) is procedurally barred from consideration by a federal habeas court and should be dismissed.

**Merits of Remaining Grounds**

26

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to

or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### Ground One(A)

In Ground One(A), Petitioner argues trial counsel was ineffective for failing to adequately argue Petitioner's pre-trial motion for a severance.  [Doc. 1-1 at 3.]  More specifically, Petitioner contends trial counsel failed to argue that jury instructions issued in a joint trial of Petitioner and her co-defendants would inevitably be very cumbersome and complex and that Petitioner's joint trial with her co-defendants would prevent a jury from being adequately and clearly charged on the difference between the findings necessary for her conviction as opposed to those required to convict her co-defendants.  [*Id.* at 5–7.]

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[6]

---

[6]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. 668, 687 (1984).  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Court cautioned that "[j]udicial scrutiny of counsel's performance

*Richter*, 562 U.S. at 101. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland*. [App. 1190–98.] With respect to Ground One(A), the PCR court found,

> This Court finds that counsel properly made a motion for severance. Criminal defendants who are jointly tried are not entitled to separate trials as a matter of right. Hughes v. State, 346 S.C. 554, 552 S.E.2d 315 (2001) (citing State v. Dennis, 337 S.C. 275, 523 S.E.2d 173 (1999)). There can be no clearly defined rule for determining when a defendant is entitled to a separate trial, because the exercise of discretion means that the decision must be based upon a just and proper consideration of the particular circumstances that are presented to the court in each case. State v. McIntire, 221 S.C. 504, 71 S.E.2d 410 (1952); State v. Walker, 366 S.C. 643, 623 S.E.2d 122 (Ct. App. 2005). A severance should be granted only when there is a serious risk that a joint trial would compromise a specific trial right of a co-defendant or prevent

---

must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

the jury from making a reliable judgment about a co-defendant's guilt. <u>Harris</u>, 351 S.C. at 652–53, 572 S.E.2d at 273; <u>Dennis</u>, 337 S.C. 275, 523 S.E.2d 173. The general rule allowing joint trials applies with equal force when a defendant's severance motion is based upon the likelihood he and a co-defendant will present mutually antagonistic defenses, i.e., accuse one another of committing the crime. <u>Dennis</u>, 337 S.C. at 281, 523 S.E.2d at 176. The rule allowing joint trials is not impugned simply because the co-defendants may present evidence accusing each other of the crime. <u>Id.</u> Here, the Applicant and her co-defendants did not present mutually antagonistic defenses. Trial counsel requested a severance to protect Applicant from being tried jointly with her co-defendants, but the trial court denied the motion.

[App. 1192–93.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. Petitioner has presented no evidence to support her speculation that the trial court would have granted the motion to sever if trial counsel had argued the jury instructions issued in a joint trial of Petitioner and her co-defendants would inevitably be cumbersome and complex. Nor has Petitioner established prejudice. The trial court specifically instructed the jury that the co-

30

defendants were charged with different crimes and that each co-defendant's case must be considered separately and individually.  [App. 719–20]; *see State v. Dennis*, 523 S.E.2d 173, 176 (S.C. 1999) (finding a trial judge did not abuse his discretion by denying a motion to sever and noting the judge gave a cautionary instruction).  Therefore, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on this ground.

### *Ground Two*

In Ground Two, Petitioner argues trial counsel was ineffective for failing to adequately cross-examine State witness, co-defendant Kerry Hollins ("Hollins"), to elicit testimony that would have been favorable to the defense.  [Doc. 1-1 at 10.]  More specifically, Petitioner alleges trial counsel failed to elicit testimony, similar to Hollins's PCR testimony, that Petitioner was unaware of any plan for Hollins, or anyone with him, to bring weapons when taking money from the victim and that Petitioner was unaware that the victim may be harmed.  [*Id.* at 10–12.]

The PCR court addressed trial counsel's performance under the standard set forth in *Strickland*.  [App. 1190–98.]  With respect to Ground Two, the PCR court found,

> This Court finds that counsel was able to properly cross-examine Kerry Hollins at trial.  Counsel testified that Mr. Bolus, a co-defendant's attorney, followed up and got Mr. Hollins to admit that a lick could be a person rather than just a robbery. Counsel testified that he did not ask Mr. Hollins if he knew there would be weapons involved because he did nto know what Mr. Hollins would say, particularly since he was testifying against Applicant and looking to solidify a good plea deal.  He testified that he did not ask Patricia Kennedy, Mr. Hollins' attorney, if her client would speak with him, but counsel assumed Mr. Hollins would not speak with him since he was a

31

> co-defendant who was testifying for the State. Mr. Hollins' testimony at the PCR hearing indicates that he might have offered testimony beneficial to the defense at the Applicant's trial, if he had been properly examined by defense counsel. This Court finds that counsel was able to cross-examine Mr. Hollins regarding some details of the incident as well as why he decided to testify against his co-defendants.

[App. 1195–96.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. At the PCR hearing, in response to a question about why trial counsel did not question Hollins about whether, to his knowledge, Petitioner had any idea weapons were going to be used, trial counsel testified:

> And I guess my concern at that point was if Hollins was getting up there testifying against [Petitioner], my concern then is, we knew he was adverse to our position, was going to do whatever it took to solidify hopefully his and get a better deal. So my concern then is I didn't know what he was going to say until he got up there and said, well, [Petitioner] was in on it the whole time. She was in the car watching us load them, you konw, guns and stuff like that, I didn't have any way to contest that other than to put [Petitioner] on the stand at that time, and

> which I just didn't think – so I felt like we were able to do enough at that time to distinguish between what [Petitioner] would have thought a lick was with this common plan and what [Hollins] thought a lick was.

[App. 965:13–66:2; *see also* App. 967:22–24, 1015:7–14.]   Additionally, trial counsel testified that, although he did not ask Hollins whether Petitioner knew weapons were going to be used, other than using the term "lick," neither Hollins's statement nor his testimony at trial attributed to Petitioner knowledge that weapons would be used or of violence.  [App. 974:5–19, 981:9–21.] Courts are instructed not to second guess an attorney's trial strategy and tactics.  *Stamper v. Muncie*, 944 F.2d 170 (4th Cir. 1991); *see also Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) ("The decision as to whether to cross-examine a witness is a tactical one well within the discretion of a defense attorney."  (citation and internal quotation marks omitted)).   Trial counsel testified to his reasons for this trial strategy, the PCR court found trial counsel's testimony was credible, and that determination is entitled to deference.  *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) (holding that for a federal habeas court to overturn a state court's credibility judgment, the state court's error must be stark and clear); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").   Moreover, Petitioner has failed to direct this Court to any legal authority to support her argument that trial counsel could have and/or should have conducted his cross-examination of Hollins differently.   Accordingly, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application

of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on this ground.

### Ground Three

In Ground Three, Petitioner argues trial counsel was ineffective for failing to properly respond to testimony from Hollins that a "lick" conclusively meant an armed robbery. [Doc. 1-1 at 12.]  Petitioner contends trial counsel failed to object each time the State sought to introduce testimony that the street term a "lick" conclusively meant an armed robbery, failed to move for a mistrial, and failed to request a curative charge.  [*Id.*]

The PCR court addressed trial counsel's performance under the standard set forth in *Strickland.*  [App. 1190–98.]  With respect to Ground Three, the PCR court found,

> This Court finds that trial counsel was not ineffective for failing to object when the State elicited testimony that a "lick" meant an armed robbery.  Counsel testified that he did not object because Kerry Hollins referenced a "lick" in his statement and he assumed the State was asking for Mr. Hollins' opinion of what a "lick" meant.  Mr. Hollins testified at trial that a "lick" was a robbery and that you need some kind of weapon to do a robbery.  This Court finds that trial counsel had no basis to object to this testimony.

[App. 1191.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court

concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*.  At the PCR hearing, in response to a line of questioning about why trial counsel did not object when the State elicited testimony that a "lick" meant an armed robbery, trial counsel testified, ". . . My perception of the testimony was he was saying what he thought it was.  They had asked him the question and he had answered what he thought it was."  [App. 963:7–9.]  Trial counsel further testified, " . . . and I didn't follow up on that as much because Mr. [Bolus] followed back up there and got him to say that a lick was actually a noun and may be a person.  So in my mind, again, is he then equivocated on what lick ment.  And ---."  [App. 964:17–21; *see also* App. 975:13–16.]  As stated, courts are instructed not to second guess an attorney's trial strategy and tactics.  *Stamper*, 944 F.2d 170; *see also Fugate*, 261 F.3d at 1219.  Trial counsel testified to his reasons for this trial strategy, the PCR court found trial counsel's testimony was credible, and that determination is entitled to deference.  *Cagle*, 520 F.3d at 324; *see also Marshall*, 459 U.S. at 434.  Accordingly, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on this ground.[7]

---

[7]In the amended order of dismissal, the PCR court addressed this claim only with respect to Petitioner's allegation that trial counsel was ineffective for failing to object to the testimony; therefore, any claim that trial counsel was ineffective for failing to move for a mistrial or request a curative instruction is procedurally defaulted.  Moreover, because the PCR court found trial counsel had no basis to object to the testimony [App. 1191], trial counsel likewise would have had no basis to move for a mistrial or request a curative

*Ground Four*

In Ground Four, Petitioner argues trial counsel was ineffective for failing to adequately argue Petitioner's right to directed verdicts of acquittal based on insufficiency of the evidence presented by the prosecution.  [Doc. 1-1 at 14.]

The PCR court addressed trial counsel's performance under the standard set forth in *Strickland*.  [App. 1190–98.]  With respect to Ground Four, the PCR court found,

> This Court finds that trial counsel made a proper direct verdict motion.  Counsel argued that Applicant was too far removed from the circumstances, there was no common scheme or plan to commit armed robbery or murder, and it was not a natural and probable consequence that the murder would occur.  A case should be submitted to the jury if there is any direct evidence or any substantial circumstantial evidence that reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced.  State v. Weston, 367 S.C. 279, 292–93, 625 S.E.2d 641, 648 (2006).  When ruling on a motion for directed verdict, the trial court is concerned only with the existence or nonexistence of evidence, not its weight.  State v. Cherry, 361 S.C. 588, 593–94, 606 S.E.2d 475, 478 (2004).  Here, this Court finds that counsel zealously argued on Applicant's behalf, but the trial court found that there was enough evidence to submit the case to the jury.

[App. 1192.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court

_____

instruction because of the testimony.

36

concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. Trial counsel moved for a directed verdict on both charges. [App. 559–60.] The trial court found there was direct and substantial circumstantial evidence reasonably tending to prove Petitioner's guilt with respect to the accessory before the fact of felony murder charge; thus, the trial court denied Petitioner's motion for directed verdict on that charge. [App. 563–64.] After reserving ruling on the accessory before the fact of armed robbery charge, the trial court also denied the motion with respect to that charge. [App. 628.] At the PCR hearing, trial counsel testified that he did not argue that Petitioner was present and, therefore, could not be liable as an accessory before the fact because if she had been present, she would have been charges as a principal rather than an accessory. [App. 985.] Moreover, Petitioner's argument here that "it is *possible* that she was present during the alleged act of robbery" [Doc. 23 at 21] is entirely too speculative to support a finding that trial counsel was ineffective for failing to argue Petitioner was present. Accordingly, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on this ground.

### Ground Five

In Ground Five, Petitioner argues trial counsel was ineffective for advising Petitioner that by not presenting a defense trial counsel would retain the right to make his closing argument after the prosecution's and for advising Petitioner that she should not take the

stand in order to preserve the opportunity to make the final argument to the jury. [Doc. 1-1 at 16.] Petitioner argues that once trial counsel realized all co-defendants had lost their right to a final argument, he should have made this clear to Petitioner, who wanted to testify on her own behalf. [*Id.* at 17.]

The PCR court addressed trial counsel's performance under the standard set forth in *Strickland*. [App. 1190–98.] With respect to Ground Five, the PCR court found,

> This Court finds that counsel was not ineffective for failing to discuss last argument with Applicant or advising her that she would preserve last argument by not testifying. Counsel did not recall whether or not he discussed last argument with Applicant. He testified that he and Mr. Bolus were surprised to lose last argument based on the third co-defendant entering one piece of evidence. When asked who made the decision for the Applicant not to testify, defense counsel expressly stated, "probably it would have been mine." However, this Court finds that counsel provided other reasons that he advised Applicant not to testify. He was concerned about how Applicant would handle cross-examination from two strong prosecutors who would try to confuse her. He was also concerned that if one co-defendant's pending murder charges came out then the jury might have believed that it was foreseeable that someone would get killed in this robbery. In addition, this Court finds that it was ultimately Applicant's decision not to testify. Applicant testified that she never told counsel that she wanted to testify. This Court finds that counsel's discussions with Applicant, or lack thereof, regarding last argument did not affect the outcome of the trial.

[App. 1196.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme

Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*.  At the PCR hearing, trial counsel testified that he did not put Petitioner on the stand because he did not want to subject her to cross-examination and because he was concerned that her testimony may reveal that one of her co-defendants had two pending murder charges and that may make it seem foreseeable that they might have used guns during the robbery.  [App. 1005, 1006.] The Fourth Circuit Court of Appeals has held that "the advice provided by a criminal defense lawyer on whether his client should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'"  *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) (quoting *Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir. 1983)).  In some circumstances, where defendants have followed trial counsel's advice but trial counsel was later found to have misinformed defendants with respect to the consequences of taking the stand, courts have found ineffective assistance of counsel. *See, e.g.*, *Foster v. Delo*, 11 F.3d 1451, 1457–58 (8th Cir. 1993) (finding counsel provided ineffective assistance regarding the petitioner's right to testify at the sentencing phase of his case because the petitioner "had nothing to lose and everything to gain by testifying at the penalty phase," where his guilt had already been established, and "[h]is only chance to escape the death penalty required a plea for his own life, asking the jury for mercy, portraying himself as a human being")*; Blackburn v. Foltz*, 828 F.2d 1177, 1182 (6th Cir. 1987) (holding that a defendant was deprived of a meaningful opportunity to decide

whether to testify where counsel misinformed the defendant about the Government's use of prior convictions if defendant took the stand).  However, here, the PCR court found that trial counsel provided other reasons why he advised Petitioner not to testify.  Moreover, at the PCR hearing, Petitioner conceded she never told trial counsel that she wanted to testify.  [App. 1047.]  Finally, Petitioner has failed to direct this Court to any legal authority to support her argument that trial counsel was ineffective based on this advice or that Petitioner was prejudiced as a result.  Accordingly, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on this ground.

### Ground Six

In Ground Six, Petitioner argues trial counsel was ineffective for failing to request appropriate and necessary jury instructions and for failing to object to jury instructions that did not adequately convey to the jury the requirement that they apply a separate foreseeability analysis to determine the liability of Petitioner, separate from their findings concerning the liability of each of her co-defendants.  [Doc. 1-1 at 18.]

The PCR court addressed trial counsel's performance under the standard set forth in *Strickland*.  [App. 1190–98.]  With respect to Ground Six, the PCR court found,

> This Court finds that counsel was not ineffective for failing to request a jury charge on accessory before the fact to strong arm robbery.  Counsel requested a jury charge on strong arm robbery based on the fact that neither Applicant's statement nor Mr. Hollins' statement mentions weapons.  However, the trial court declined to charge strong arm robbery because there was no evidence in the record that the incident took place without weapons.  If the trial court had considered the charge from the perspective of whether the Applicant knew that weapons would be involved, it is still unlikely that the trial court would have charged accessory before the fact to strong

40

arm robbery. This Court finds that Applicant was not prejudiced by counsel's failure to request such a charge.

This Court finds that trial counsel was not ineffective for failing to object to the trial court's jury instructions on accomplice liability and foreseeability. The trial court gave the standard charge on accomplice liability and "the hand of one is the hand of all." (ROA p. 716, line 2 – p. 717, line 20). The trial then stated as follows:

> Ladies and gentlemen, the defendant Marquita Smith is charged with being an accessory before the fact of the felonies of murder and armed robbery. In order to prove beyond a reasonable doubt that the defendant, Marquita Smith, either advised, agreed, urged, counseled, hired, or in some way aided and abetted – aided and abetted another person to commit a crime, and that the defendant was not present when the offense was committed.
>
> Aid means to help, to promote the course or accomplishment of, to give support to, or to give assistance to. Abet means to encourage or appear to favor or support.

(ROA p. 718, lines 2-14). In its closing statement, the State argued that Applicant orchestrated the plan and used the word "robbery" in her own statement and that when you rob someone, it is entirely foreseeable that the person could be killed during the course of the robbery. (ROA p. 676, line 19 – p. 679, line 16). Trial counsel argued that there was a difference between the Applicant and her codefendants and that she is only responsible for the probable and natural consequences of her actions. (ROA p. 653, line 22 – p. 654, line 13). Counsel also argued that it was not foreseeable that the co-defendants would have kidnapped and murdered the victim. (ROA p. 669, line 12 – p. 671, line 24). The trial court addressed the jury as follows:

> The case of each defendant and the evidence and the law concerning that defendant should be considered separately and individually. Your verdict does not have to be the same for all defendants. The fact that you may find one

> defendant guilty should not control your verdict as to the other defendants.
>
> Where more than one person is charged with a crime, if the evidence warrants it, you may convict one and acquit the other; or you may acquit both or you may convict both or all. It will depend upon your view of the testimony and evidence.
>
> You must take each defendant and consider the evidence as to that defendant and my instructions to you on the law. You will then write a separate verdict of guilty or not guilty for each individual defendant.

(ROA p. 720, lines 7-21).

> The Applicant similarly alleged that defense counsel was ineffective for failing to prepare and present to the lower court a proposed accomplice liability instruction concerning the law as it pertained to charges of accessory before the fact. In his PCR testimony, defense counsel offered no explanation for his failure to submit a proposed jury instruction on this crucial point. The instruction given on accomplice liability or foreseeability were standard and appropriate and this Court finds that trial counsel was not deficient for failing to object to the trial court's instructions or failing to present a more appropriate accomplice liability instruction.

[App. 1193–95.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court

42

concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

With respect to Petitioner's argument that trial counsel failed to request an instruction on accessory before the fact to strong arm robbery, "[a]t the accessory's trial, . . . the State must prove that the principal is guilty or the accessory may not be convicted." *Sellers v. State*, 607 S.E.2d 82, 85 (S.C. 2005); *see also State v. Cox*, 351 S.E.2d 489, 493 (S.C. 1986) ("In *State v. Massey*, 267 S.C. 432, 229 S.E.2d 332 (1976) we held that an accessory could be convicted notwithstanding the *prior* acquittal of the alleged principal, or even notwithstanding the identity of the principal was unknown. That is, an accessory may be convicted as long as sufficient evidence is adduced to show that *some* principal committed the underlying substantive crime." (emphasis in original)); *State v. Price*, 294 S.E.2d 426, 428 (S.C. 1982) ("The requirement that the jury in the trial of the accessory must find as a fact the principal did actually commit the crime involved is still the rule."). Here, the trial court rejected trial counsel's proposed strong arm robbery instruction because it found there was no factual support for the instruction because the evidence at trial established the robbery took place with weapons. [App. 603.] Because the trial court concluded no evidence supported a charge on the underlying crime of strong arm robbery, a charge for accessory before the fact of strong arm robbery also would not have been proper. *See Sellers*, 607 S.E. 2d at 85. Further, with respect to Petitioner's argument that trial counsel should have requested a different instruction on accomplice liability and/or objected to the instructions given, the PCR court found that the trial court gave the standard charge on accomplice liability, and Petitioner has failed to direct this Court to any legal authority to support her argument that trial counsel should have requested a different

43

accomplice liability instruction.  Accordingly, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on this ground.

### Ground Seven

In Ground Seven, Petitioner argues trial counsel was ineffective for failing to make certain crucial closing arguments to the jury and for failing to object to inappropriate arguments made by the prosecution in closing argument.  [Doc. 1-1 at 22.]

The PCR court addressed trial counsel's performance under the standard set forth in *Strickland*.  [App. 1190–98.]  With respect to Ground Seven, the PCR court found,

> This Court finds that trial counsel was not ineffective for advising the jury during his closing statement that Applicant was not present for the principal offenses.  The evidence produced at trial indicated that Applicant was present for the kidnapping and burglary, but she was not present for the murder and armed robbery.  Because she was present for the burglary and the kidnapping, she was not charged with accessory before the fact to those offenses.  Counsel's purpose in advising the jury that Applicant was not present for the murder and armed robbery was not to stipulate to an element of accessory before the fact, but rather to argue that Applicant was too far removed from those offenses and that those offenses were not foreseeable to her.  This Court finds no deficiency in counsel's closing argument.

> ***

> This Court finds that Applicant was not prejudiced by counsel's failure to object to the State's comment during closing argument that any time a victim is killed "in the course of another felony, then his death is murder.  End of story."  (ROA p. 693, lines 12-20).  First, this Court finds that the State's closing did not shift the burden of proof for malice to the defendants.  Moreover, even if counsel was deficient for failing to object, the Applicant was not prejudiced because the trial court properly charged the jury on malice and cured any

potential defect.  The trial court charged the jury as follows regarding malice:

> I further instruct you that if one intentionally kills another during the commission of a felony, the inference of malice *may* arise.  If facts are proven beyond a reasonable doubt sufficient to raise an inference of malice to your satisfaction, this inference would simply be an evidentiary fact to be taken into consideration by you along with all of the other evidence in the case, and you *may* give it the weight that you decide it should receive.

> (ROA p. 711, lines 5-12) (Emphasis added).  This Court finds that the trial court's proper instruction cured any prejudice from the State's closing statement.

[App. 1195–97.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*.  At trial, Detective Gerald Merrithew read Petitioner's statement, in which she stated that after the victim was pushed down in the hallway, she ran away and did not look back.  [App. 548.]  At the PCR hearing, trial counsel testified that he told the jury in closing argument that Petitioner was

45

not present during the armed robbery and murder because he was trying to break the chain of foreseeability to establish that it was not foreseeable that the victim would be taken to a random residence and executed.  [App. 990.]  Additionally, following closing arguments, the trial court instructed the jury on the law, including the following instruction:

> Malice may be inferred from conduct showing a total disregard for human life.  Inferred malice may also arise when the deed is done with a deadly weapon.  A deadly weapon is any article, instrument, or substance which is likely to cause death or grave bodily harm.  Whether an instrument has been used as a deadly weapon depends on the facts and circumstances of each case.  The following are examples of dead – are examples of instruments which may be deadly weapons: a pistol, a shotgun, a riffle, a dirk, a dagger, a knife, a slingshot, metal knuckles, a razor, gasoline, a firebomb or Molotov cocktail, and lighter fluid.  A gun may be a deadly weapon even if it is not operating.
>
> I further instruct you that if one intentionally kills another during the commission of a felony, the inference of malice may arise.  If facts are proven beyond a reasonable doubt sufficient to raise an inference of malice to your satisfaction, this inference would simply be an evidentiary fact to be taken into consideration by you along with all of the other evidence in the case, and you may give it the weight you decide it should receive.

[App. 710:17–11:13.]  Thus, Petitioner cannot establish that she was prejudiced by trial counsel's failure to object to the prosecution's closing argument.  Accordingly, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on this ground.

### *Ground Eight*

46

In Ground Eight, Petitioner argues trial counsel was ineffective for failing to argue in opening statements that murder was not a foreseeable consequence of any agreement entered into between Petitioner and her co-defendants.  [Doc. 1-1 at 25.]

The PCR court addressed trial counsel's performance under the standard set forth in *Strickland*.  [App. 1190–98.]  With respect to Ground Eight, the PCR court found,

> This Court finds that trial counsel made a proper opening argument.  Counsel testified that the purpose of his opening statement was to provide an outline of how everything occurred.  He argued that it was the jury's duty to decide whether these crimes were committed and whether they were natural consequences of Applicant's actions. Counsel testified that he did not want to overemphasize the murder in his opening statement.  This Court finds no deficiency in trial counsel's opening statement.

[App. 1195.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*.  In his opening statement, trial counsel stated,

47

Ladies and gentlemen, we also met yesterday. My names Craig Jones and I represent Marquita Smith. And we -- certainly seems like she's the star in this show. You saw the solicitor walk right over here and point right in her face.

One thing that she said and struck me was that she contemplated this armed robbery. Ladies and gentlemen, part of this is y'all have got to decide whether there was an armed robbery and what she contemplated. Because certain crime occurred doesn't necessarily mean that she contemplated it. And again, the solicitor also -- it's got to be a natural consequence.

Well, I would ask that y'all listen to all the facts, listen to all the witnesses, and listen to all the evidence. Aside from just proving that crimes occurred, you kind of have a secondary -- with accessory, a secondary function is that you've got to determine what she knew or should have known.

Ladies and gentlemen, I would ask that you would listen very carefully. I would ask that you would weigh in. People are held responsible for what they do. You don't hold them responsible for everything that happens after that. At some point it's just too far beyond what you can foresee.

I would ask you keep an open mind, understand that this is a long, complicated deal. There are a lot of people, there's a lot of confusion in this, but the focus is: What did these people do? What did they know or should have known? And I would ask that you would just listen to the evidence or take what either side says, filter through your experience: "If that were me, would I or should I have known?"

[App. 125:3–26:9.] At the PCR hearing, trial counsel testified he was hoping not to over-emphasize, that he felt the prosecution's strongest case was the robbery, and he was hoping the murder would be an even further unforeseen consequence than the robbery. [App. 979.] Moreover, Petitioner has failed to direct this Court to any legal authority that trial counsel's opening argument was improper. Accordingly, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable

48

Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on this ground.

### Ground Nine

In Ground Nine, Petitioner argues appellate counsel was ineffective. [Doc. 1-1 at 26.] More specifically, Petitioner argues appellate counsel failed to raise two meritorious issues in her direct appeal: 1) that the lower court erred by denying Petitioner's directed verdict motions on all charges and 2) that the lower court erred by charging to the jury that the State would only have to prove that Petitioner aided and abetted another person "to commit a crime." [*Id.*]

As the Fourth Circuit Court of Appeals has acknowledged,

> The "right to effective assistance of counsel extends to require such assistance on direct appeal" as well as at trial. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (applying the *Strickland* standard to claims of ineffective assistance of counsel during appellate proceeding). We likewise presume that appellate counsel "decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008). As a general matter, "'only when ignored issues are clearly stronger than those presented'" should we find ineffective assistance for failure to pursue claims on appeal. *Smith v. Robbins*, 528 U.S.259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

*United State v. Mason*, 774 F.3d 824, 828–29 (4th Cir. 2014).

With respect to Ground Nine, the PCR court found,

> This Court finds that appellate counsel and co-counsel are experienced appellate attorneys. This Court finds that appellate counsel properly chose to brief the issues that she and her co-counsel believed were the most meritorious.

49

> Appellate counsel testified that she and her former employer Tommy Thomas, Esquire, each read the trial transcript, looked for issues that were preserved for appeal, and debated which issues were the best issues to raise. She testified that she drafted an argument on the directed verdict issue, but she ultimately decided that it was not their strongest issue. Appellate counsel also testified that she and Mr. Thomas agreed with the trial court that guns were involved so strong arm robbery should not have been charged. She testified that she and Mr. Thomas discussed all the issues that were preserved and chose not to raise the issue about lower court's charge to the jury that the State would only have to prove that the Applicant aided and abetted another person "to commit a crime." This Court finds that Applicant has failed to show that appellate counsel's representation was deficient.

[App. 1199.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard,[8] which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. At the PCR hearing,

---

[8]Although in the section of the PCR court's amended dismissal order dedicated to Petitioner's ineffective assistance of appellate counsel claims, the PCR court cited to South Carolina case law [App. 1198–99], it is clear the standard applied is the same as the standard in *Strickland* that was previously outlined in the PCR court's amended dismissal order [App. 1190–91].

when asked why she did not argue on appeal that the lower court erred by denying

Petitioner's directed verdict motions on all charges, appellate counsel answered,

> To best answer that question I can go through the process that Mr. Thomas and I used. We both read the transcript. We both made transcript notes and do what a lot of attorneys call issue spotting. All the issues that we thought were properly objected to or preserved for appeal, since we're a preservation State, we were looking to make sure they were all preserved. We both make a list. And then we have a series of, what we call, pow wow's, where him and I go back and forth and debate what are the best issues. When I worked at his firm, a majority of the writing fell as my responsibility. So what I would do is draft – start drafting a brief that we would go back and forth with and narrow down to our final issues. In this case, I do recall drafting an argument on that, but after some time, which we discussed yesterday, we just decided that was not one of our best issues. Not to say it wasn't meritorious, we just decided strategically that wasn't one of the best issues to present, even though it was preserved.

[App. 930:5–23.] As explained, effective assistance of appellate counsel does not require

the presentation of all meritorious issues. *Mason*, 774 F.3d at 828–29 (citing *Lawrence*,

517 F.3d at 709). Additionally, Petitioner has failed to direct this Court to any legal authority

to support her argument that the trial court's accessory instruction was error. Accordingly,

Petitioner has not established that the PCR court's decision was contrary to or an

unreasonable application of applicable Supreme Court precedent, and Petitioner is not

entitled to habeas corpus relief based on this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's

motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin

51

United States Magistrate Judge

July 25, 2016
Greenville, South Carolina